**Nos. 2016-1550, 2016-1556**

# In the
# United States Court of Appeals
# for the Federal Circuit

AMERICAN NEEDLE, INC.,

*Plaintiff-Appellant,*

v.

ZAZZLE INC.; CAFEPRESS INC.,

*Defendants-Appellees.*

_____

Appeal from the United District Court
for the Northern District of Illinois, Case Nos. 1:15-cv-03968, 1:15-cv-03971.
The Honorable **John W. Darrah**, Judge Presiding.

## BRIEF OF PLAINTIFF-APPELLANT
## AMERICAN NEEDLE, INC.

MATTHEW M. WAWRZYN
SIPRUT PC
17 N. State St., Suite 1600
Chicago, IL 60602
(312) 236-0000
mwawrzyn@siprut.com

*Counsel for Plaintiff-Appellant
American Needle, Inc.*

 COUNSEL PRESS · (866) 703-9373                    PRINTED ON RECYCLED PAPER 

## CERTIFICATE OF INTEREST

Pursuant to Federal Circuit Rule 47.4, counsel for Appellant American Needle, Inc. certifies the following:

1.     The full name of every party or amicus represented by me is:

American Needle, Inc.

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

N/A

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

N/A

4.     The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

Matthew M. Wawrzyn
Stephen C. Jarvis
SIPRUT PC
17 N. State Street, Suite 1600
Chicago, IL 60602
(312) 236-0000

Date: April 4, 2016     */s/ Matthew M. Wawrzyn*
Matthew M. Wawrzyn
*Counsel for Appellant American Needle, Inc.*

# **TABLE OF CONTENTS**

STATEMENT OF RELATED CASES ........................................................... 1

JUSRISDICTIONAL STATEMENT ........................................................... 1

    *Jurisdiction in the District Court* .................................................... 1

    *Jurisdiction in the Court of Appeals* ............................................... 1

STATEMENT OF THE ISSUES .................................................................. 2

STATEMENT OF THE CASE ...................................................................... 3

    Statement of the Facts ...................................................................... 3

        *Prior Art to the '980 Patent* ....................................................... 4

        *The '980 Patent and Its Intrinsic Record* ................................... 6

SUMMARY OF THE ARGUMENT ............................................................ 9

ARGUMENT ............................................................................................... 11

    Standard of Review .......................................................................... 11

I.    THE DISTRICT COURT SHOULD HAVE DENIED
    THE MOTION TO DISMISS BECAUSE THE '980
    PATENT IS DIRECTED TO A GROUND-BREAKING
    METHOD OF ELECTRONIC COMMERCE. ................................. 12

    A.    The '980 Patent Satisfies *Mayo* Step One Because
        It Concretely Claims a Transformative Electronic
        Commerce Method. .............................................................. 12

    B.    Step Two of *Mayo* Is Cleared in Any Event: the '980
        Patent Solves a Problem Particular to the Internet
        with no Solution in the "Brick and Mortar" World. ............... 15

II.    THE DISTRICT COURT ERRED BY IGNORING
        WELL-PLED FACTS AND TESTIMONY
        SUBMITTED IN OPPOSITION TO DEFENDANTS'
        EXTRINSIC EVIDENCE. ............................................................... 18

III.    THE '980 PATENT IS PRESUMED VALID AND
        MAY ONLY BE DISMISSED UPON A SHOWING OF
        CLEAR AND CONVINCING EVIDENCE
        SUPPORTING INVALIDITY. ......................................................... 21

        A.    The 1952 Patent Act and Recent Supreme Court
              Precedent Construing It Establish that the
              Presumption of Validity Applies to § 101. ............................ 22

        B.    Section 101 Does *Not* Present a
              "Pure Question of Law." ........................................................ 23

CONCLUSION ............................................................................................ 26

CERTIFICATE OF SERVICE

CERTIFICATE OF COMPLIANCE

# TABLE OF CITATIONS

## CASES

*Alice Corp. v. CLS Bank Int'l*,
  134 S. Ct. 2347 (2014) ........................................................ 14, 15, 24

*Ariosa Diagnostics, Inc. v. Sequenom, Inc.*,
  788 F.3d 1371 (Fed. Cir. 2015) ........................................................ 25

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ........................................................ 18

*Bilski v. Kappos*,
  561 U.S. 593 (2010) ........................................................ 24

*Bruce v. Guernsey*,
  777 F.3d 872 (7th Cir. 2015) ........................................................ 11

*Cybersource Corp. v. Retail Decisions, Inc.*,
  654 F.3d 1366 (Fed. Cir. 2011) ........................................................ 25

*DDR Holdings, LLC v. Hotels.com, L.P.*,
  773 F.3d 1245 (Fed. Cir. 2014) .................................... 14, 15, 16, 18

*Dealertrack, Inc. v. Huber*,
  674 F.3d 1315 (Fed. Cir. 2012) ........................................................ 11

*Diamond v. Diehr*,
  450 U.S. 175 (1981) ........................................................ 13, 14

*In re Abele*,
  684 F.2d 902 (CCPA 1982) ........................................................ 13, 14

*In re Bilski*,
  545 F.3d 943 (Fed. Cir. 2008) ........................................................ 13, 14

*In re Bill of Lading Transmission & Processing Sys. Patent Litig.*,
  681 F.3d 1323 (Fed. Cir. 2012) ........................................................ 11

*Internet Patents Corp. v. Active Network, Inc.*,
  790 F.3d 1343 (Fed Cir. 2015) .......................................................... 25

*Le Roy v. Tatham*,
  55 U.S. 156 (1853) ............................................................................. 13

*Mayo Collaborative Servs. v. Prometheus Labs., Inc.*,
  132 S. Ct. 1289 (2012) ............................................................. passim

*Microsoft Corp. v. i4i Ltd.*,
  131 S. Ct. 2238 (2011) .................................................. 12, 23, 24, 26

*OIP Tech., Inc. v. Amazon.com, Inc.*,
  788 F.3d 1359 (Fed. Cir. 2015) ........................................................ 25

*SIRF Tech., Inc. v. Int'l Trade Comm.*,
  601 F.3d 1319 (Fed. Cir. 2010) ........................................................ 25

## STATUTES

28 U.S.C. § 1331 ................................................................................... 1

28 U.S.C. § 1338 ................................................................................... 1

28 U.S.C. § 1295 ................................................................................... 1

35 U.S.C. § 101 ............................................................................. passim

35 U.S.C. § 282 ............................................................................... 3, 22

## RULES

Fed. R. Civ. P. 10 ................................................................................. 4

Fed. R. Civ. P. 12 .............................................................. 10, 11, 18, 19, 20

## STATEMENT OF RELATED CASES

Pursuant to Federal Circuit Rules 28(a)(4) and 47.5, counsel for appellant American Needle, Inc. states: (a) no other appeal in or from the same consolidated civil actions in the trial court was previously before this or any other appellate court; and (b) no other case known to counsel to be pending in this or any other court will directly affect or be directly affected by this Court's decision in this consolidated appeal.

## JUSRISDICTIONAL STATEMENT

### *Jurisdiction in the District Court*

This action arose under the patent laws of the United States, 35 U.S.C. §§ 101 *et seq.* Thus, the District Court had subject matter jurisdiction over this action under 28 U.S.C. §§ 1331 and 1338(a).

### *Jurisdiction in the Court of Appeals*

The Court of Appeals has jurisdiction under 28 U.S.C. § 1295. American Needle, Inc. ("American Needle") seeks review of the District Court's holding that American Needle's patents were invalid under 35 U.S.C. § 101 and consequent grant of defendants' motions to dismiss on January 19, 2016, which was a final judgment that disposed of the parties' claims. American Needle timely filed its notices of appeal on February 1, 2016.

## STATEMENT OF THE ISSUES

I.     Whether the claim to a method for facilitating the sale of three-dimensional objects over a computer network is necessarily rooted in computer technology and therefore a "process" within the meaning of 35 U.S.C. § 101.

II.     The patent-in-suit, U.S. Patent No. 7,319,980 (hereinafter, the "'980 patent"), claims "[a] method for facilitating sale to a potential customer of an object over a computer network, said object having a predetermined three-dimensional shape . . . ." (Appx14, col. 4:36-38.) The U.S. Patent and Trademark Office (hereinafter, the "PTO") allowed the '980 patent claims because, among other reasons, the '980 patent solved the challenge of selling objects on line using a two-dimensional format to preview merchandise. (Appx101.) Defendants supported their motions to dismiss with extrinsic evidence purporting to show that the '980 patent claims only conventional business methods performed by merchants for hundreds of years. (Appx35.) In response, plaintiff submitted the affidavit of its president testifying that his prior art system demonstrates that one *cannot* perform the '980 methods in his head or with pencil and paper. (Appx69-71.) Did the District Court err by failing to construe the claim language, the file history, and plaintiff's

affidavit in plaintiff's favor as establishing a plausible claim that the '980 patent is rooted in computer technology and *cannot* be replicated in the "brick and mortar" world?

III.    Whether the presumption of validity set forth in 35 U.S.C. § 282(a) applies to a court's decision to invalidate a patent under § 101 of the Patent Act.

## STATEMENT OF THE CASE

Robert Kronenberger is the sole inventor of the '980 patent, and American Needle is the exclusive owner of all rights in the '980 patent. (Appx9; Dkt. No. 1 ¶ 7.)[1] On May 5, 2015, American Needle filed complaints against CafePress Inc. ("CafePress") and Zazzle Inc. ("Zazzle") alleging that each directly infringes the '980 patent. (Dkt. No. 1 ¶ 9.) On September 17, 2015, CafePress and Zazzle moved to dismiss the Complaint for failure to state a claim. (Dkt. No. 13.) On January 19, 2016, the District Court granted the motions, holding that the '980 patent was invalid under 35 U.S.C. § 101. (Dkt. No. 29.) On February 1, 2016, American Needle filed its notice of appeal. (Dkt. No. 30.)

### Statement of the Facts

The following facts are taken from the Complaints, including the

---

[1] Citations to the district court docket are to *American Needle, Inc. v. Zazzle*, Case No. 1:15-cv-3971 unless otherwise noted.

patent-in-suit, which was attached as Exhibit 1 to the Complaints. *See* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). The facts are also taken from the file history to the '980 patent and the Affidavit of Robert A. Kronenberger, submitted with the opposition to the motions to dismiss. Plaintiff submitted the Kronenberger affidavit in response to defendants' introduction of extrinsic evidence to show that the '980 patent's invention could be performed by a human with pencil and paper. (Appx34-35 (Dkt. No. 13) (citing Gerald W.R. Ward, *The Grove Encyclopedia of Materials and Techniques in Art*, 158 (2008); Alan Jefferis & David A. Madsen, *Architectural Drafting and Design*, 9-11 (2010)).)

### *Prior Art to the '980 Patent*

1.    American Needle has been in business since 1918. (Appx69 (Kronenberger Aff.) ¶ 3.) The company approached the Chicago Cubs in 1946 with a proposal to sell Cubs fans ball caps like the ones worn by the players. (*Id.* ¶ 4.) Although Cubs ownership was skeptical of American Needle's proposal, the Cubs allowed American Needle to try the idea. (*Id.*) And, as we now know, an industry was born. (*Id.*) Ever since, American Needle has sold, among other things, customized headwear, including baseball caps. (*Id.* ¶ 5.)

2.     Selling customized baseball caps presented a challenge to American Needle. (Appx69-70 (Kronenberger Aff.) ¶ 8.) With hundreds of cap styles and literally millions of different design elements that could make a cap, American Needle needed a way to provide the consumer with a means to assess all of these combinations to make a baseball cap that suited the consumer's unique taste. (*Id.*)

3.     In 1999, the President of American Needle, Robert Kronenberger, developed a system aimed at the challenge his company faced. (Appx70 (Kronenberger Aff.) ¶¶ 9-10.) The system was a "custom catalog" made up of pages and pages of photographed and hand drawn baseball caps and other headwear. (*Id.* ¶ 9.) Next to these images, the catalog provided color tiles, indicating available colors for any given style. (*Id.*) The catalog included transparent acetate sheets bearing various logos of sports teams and trademarks. (*Id.*) Finally, the catalog provided an embroidery specification sheet, which provided the length and width of certain areas on the cap where a logo could be placed. (*Id.*)

4.     The catalog allowed the consumer to pick the style of the cap, the color, and the logo. (Appx70 (Kronenberger Aff.) ¶ 9.) By holding the desired logo on the acetate sheet over the desired style, the consumer could approximate how his desired cap would look once American Needle had

manufactured the cap and the consumer had purchased the cap. (*Id.*)

5.    The catalog, while useful to a degree, could not overcome the significant limitation of being two dimensional. (Appx70-71 (Kronenberger Aff.) ¶ 11.) At best, American Needle could provide a customer with multiple two-dimensional images, on which the customer could view a logo on the cap from one angle. (*Id.*) The catalog's utility was also limited by being in hard copy form. (*Id.* ¶ 12.) By not using a computer network as part of American Needle's prior art system, American Needle was not able to turn design of the custom baseball cap completely over to the consumer. (*Id.*) That is, working in two-dimensional hard copy form, there was no way for American Needle to give the customer the ability to access every logo and color combination—the expense would have been prohibitive and execution would have been impractical. (*Id.*)

### The '980 Patent and Its Intrinsic Record

6.    Robert Kronenberger invented what is claimed in the '980 patent to overcome these challenges presented by the customized catalog's two-dimensional, hard copy format. (Appx71 (Kronenberger Aff.) ¶ 13.) On April 10, 2001, Kronenberger applied for a patent entitled, "Method and a Computer Network Server for Facilitating Sale of an Object." (Appx9 ('980 patent) at 1.) The '980 patent issued on January 15, 2008. (*Id.*) Claim 1 of

the '980 patent is representative and reads as follows:

> A method for facilitating sale to a potential customer of an object over a computer network, said object having a predetermined three-dimensional shape, the method comprising,
>
> over the computer network, providing the customer with a display with a plurality of display icons representing different perspective views of a pre-determined three-dimensional shape of an object;
>
> over the computer network, providing the potential customer with a user input through which a design element selected by the potential customer is included on said object at a first location on the object;
>
> providing an input for said potential customer through which any of said plurality of display icons is selected; and
>
> over the computer network, and in response to the user inputs, providing the potential customer with different perspective views of the object with the selected design element on the object at the first location represented by the selected display icon,
>
> wherein through said user inputs at least first and second different perspective views of said object with the selected design element displayed thereon at the first location are viewable, with the design element at the first location shown in each of the first and second different perspective views.

(Appx14, col. 4:36-61.)

7.    The specification of the '980 patent describes that the invention

facilitates sales of three-dimensional objects over the Internet: "In yet another form, a user input may be provided for ordering the object with the user selected design element and receiving a user order from the user input for ordering the object with the user selected design element." (Appx13 ('980 patent), col. 1:53-56.) The specification describes how the claimed process manipulates data via a computer network to yield the manufacture and sale of an object (e.g., a baseball cap) designed by the consumer:

> A VIEW request button **50** is also provided which enables the user to request to view a cap having the characteristics which he has chosen via the requests **40-48**. By clicking that request button **50**, a request may be transmitted to the server **10** which will generate a visual representation **52** of the selected cap design and transmit it to the user computer **20** for display on the display **22** such as shown in Fig. **3**. A purchase information request **56** is also provided, whereby the user may request to purchase the particular cap which he has designed and that request will be transmitted to the home site server **10** for processing of the order. (*Id.*, col. 3:17-27.) "Accordingly, a virtually infinite number of different designs may be provided to potential customers for possible purchase, with those potential customers being able to choose a design according to their own tastes which they will be able to consider to be uniquely theirs, all of which will facilitate the sale of such objects via maximized satisfaction of potential customers."

(Appx14, col. 4:20-26.)

     8.    Kronenberger filed for the '980 patent at the dawn of electronic

commerce, so called "e-commerce." Some of the prior art cited by the examiner reflects this: "Quaartz Inc. and Branders.com Partner to Advance The 'Dot.Com' Customer Experience," *Business Editors, Business Wire*, New York, May 15, 2000. (Dkt. No. 1 (Ex. 1) at 1.) The file history of the '980 patent also shows that the reason for allowance was the invention's solution to the problem of driving sales of three-dimensional objects over the Internet:

> Costin teaches an Internet based technique of allowing customization of denim apparel over the Internet. The user selects custom features for denim apparel and transmits those features to a computer run by the apparel company. The apparel company displays a facsimile of what the apparel will look like with those custom features. However, Costin only permits a user to view either the front or back of the apparel, whereby the custom feature once placed wouldn't be viewable from different perspective views as required by the ['980] claims.

(Appx101 ('980 file history excerpt) (emphasis in original).)

## SUMMARY OF THE ARGUMENT

The '980 patent claims a method of facilitating on line sales by offering customers various design elements that the customer can assess from different perspectives on the three-dimensional representation of the object. The claims transform data into the three-dimensional image of the good that is then sold over the Internet. That is a concrete process. The '980

claims cannot be said to be directed to an "abstract idea." Moreover, as the PTO found when the PTO allowed the '980 patent, the claims solve the problem particular to electronic commerce, which is facilitating sales of three-dimensional, custom goods when presentation of the merchandise is limited to a two-dimensional format. In a word, the '980 patent claims pass steps one and two of the *Mayo* test. This Court should reverse and hold that the lower court should have denied the motions to dismiss.

The District Court also turned the Federal Rules of Civil Procedure on their head. The Court assumed the allegations in the Complaints were *not* true. The claim language is explicitly tailored to e-commerce, but the Court found the claims not to be rooted in computer technology. The file history shows that the '980 patent solves a problem particular to e-commerce and computer networks, but the lower court found that the claims constitute longstanding, conventional business practice. Finally, when defendants introduced extrinsic evidence to show one can perform the claimed method in his head with pencil and paper, the District Court ignored plaintiff's rebuttal evidence and held without any support that indeed the method could be practiced with human thought alone. None of the lower court's factual findings can be squared with Rule 12 of the Federal Rules of Civil Procedure.

This appeal raises an issue of first impression for this Court—*viz*., does the presumption of validity apply to § 101? According to the U.S. Supreme Court, the presumption of validity attaches to all factual determinations made by the PTO in deciding to allow and issue a patent. Here, the PTO's factual determinations bearing on § 101 include the claim language that shows that this invention is rooted in computer technology. The PTO's fact finding includes its determination that the '980 patent solved a problem unique to e-commerce. Review of case law analyzing § 101 demonstrates that both the Supreme Court and this Court base their holdings on, among other thigs, the factual determinations underlying any § 101 analysis. Those factual determinations are presumed to have been properly decided by the PTO. The District Court erred by failing to apply the presumption of validity in this case.

## ARGUMENT

### Standard of Review

This Court reviews a district court's dismissal for failure to state a claim under the law of the regional circuit. *In re Bill of Lading Transmission & Processing Sys. Patent Litig.*, 681 F.3d 1323, 1331 (Fed. Cir. 2012). The Seventh Circuit reviews a district court's dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6) *de novo. Bruce v. Guernsey*, 777 F.3d

872, 875 (7th Cir. 2015). This Court reviews a district court's determination of patent eligibility under 35 U.S.C. § 101 *de novo*. *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012).

## I. THE DISTRICT COURT SHOULD HAVE DENIED THE MOTION TO DISMISS BECAUSE THE '980 PATENT IS DIRECTED TO A GROUND-BREAKING METHOD OF ELECTRONIC COMMERCE.

The '980 patent claims a method of selling custom made three-dimensional objects over the Internet. That is a concrete process. One that transforms data bits into merchandise that you can touch, feel, and wear to your exact taste. In this way, the '980 patent correctly issued as a § 101 "process."

The District Court should have determined that, first of all, the '980 patent does not claim an abstract idea and, therefore, clears step one of the analysis set forth in *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012). In any event, the District Court should have also held that the '980 patent passes step two of the *Mayo* test because the '980 patent uses computer technology to solve a problem particular to computer networks.

### A. The '980 Patent Satisfies *Mayo* Step One Because It Concretely Claims a Transformative Electronic Commerce Method.

Section 101 of the Patent Act provides in pertinent part as follows:

> Whoever invents . . . any new and useful process . .
> . or any new and useful improvement thereof, may
> obtain a patent therefor, subject to the conditions
> and requirements of this title.

35 U.S.C. § 101. The Supreme Court of the United States has for more than 100 years construed the patent laws to include an implied exception. You cannot patent laws of nature, physical phenomena, or abstract ideas: "A principle, in the abstract, is a fundamental truth; an original cause; a motive; these cannot be patented, as no one can claim in either of them an exclusive right." *Le Roy v. Tatham*, 55 U.S. 156, 175 (1853). In *Diamond v. Diehr*, 450 U.S. 175 (1981), for example, the Court held that a mathematical equation, standing alone, was not patentable within the meaning of § 101. *Id.* at 187. The invention before the *Diamond* Court was held to be patentable, however, because the claim applied the equation to cure rubber in a way that improved the standard industry practice. "That [patentees'] claims involve the transformation of an article, in this case raw, uncured synthetic rubber, into a different state or thing cannot be disputed. . . . Industrial processes such as this are the types which have historically been eligible to receive the protection of our patent laws." *Id.* at 184.

Eight judges of this Court held that information-age processes

transform data similar to the process in *Diamond* when the transformation of raw data translates into a visual depiction. *In re Bilski*, 545 F.3d 943, 963 (Fed. Cir. 2008) (discussing *In re Abele*, 684 F.2d 902 (CCPA 1982).) In *Abele*, this Court's predecessor held a claim patent-eligible as drawn to X-ray attenuation data that "clearly represented physical and tangible objects, namely the structure of bones, organs, and other body tissues." *Bilski*, 545 F.3d at 962-63.

The PTO's examination of the '980 application took place between 2001 and 2007, with *Diamond* and *Abele* on the books. In distinguishing over Costin, it is implied that the '980 patent is an information age transformation. Like the two-dimensional image of a bone in *Abele*, Costin was patent eligible by transforming data into a two-dimensional representation of blue jeans. And of immediate relevance, the PTO by allowing the '980 patent in light of *Diamond* and *Abele*, implicitly concluded that the three-dimensional image of a baseball cap constitutes a transformation and fits within § 101.

This Court's post-*Alice* decision, *DDR Holdings, LLC v. Hotels.com, L.P.*, 773 F.3d 1245 (Fed. Cir. 2014), confirms what American Needle posits as implicit in the PTO's examination. There, this Court held as follows with respect to patent claims directed to retaining e-commerce customers and step

one of the *Mayo* test: "[W]e note that the '399 patent's asserted claims do not recite a mathematical algorithm. Nor do they recite a fundamental economic or longstanding commercial practice. Although the claims address a business challenge (retaining website visitors), it is a challenge particular to the Internet." *Id.* at 1257.

The District Court should have applied that *DDR* holding and denied the motions to dismiss. Just as in *DDR*, here the '980 patent does not claim a longstanding, fundamental business practice, but rather the '980 patent addresses the business challenge of selling customized, three-dimensional objects over computer networks. (*See, e.g.*, Appx14 ('980 patent), col. 4:40-43 ("over the computer network, providing the potential customer with a display with a plurality of display icons representing different perspective views of a pre-determined three-dimensional shape of an object . . . .").) Indeed, the claim is drawn to a business challenge, albeit "a challenge particular to the Internet." *DDR*, 773 F.3d at 1257. Therefore, the '980 patent does not claim an abstract idea and the District Court should have concluded that the '980 patent is drawn to patentable subject matter because it passes step one of the *Mayo* test.

**B.    Step Two of *Mayo* Is Cleared in Any Event: the '980 Patent Solves a Problem Particular to the Internet with no Solution in the "Brick and Mortar" World.**

The second step of the *Mayo* analysis "is the search for an 'inventive concept,' or some element or combination of elements sufficient to ensure that the claim in practice amounts to 'significantly more' than a patent on an ineligible concept." *DDR*, 773 F.3d at 1255 (citing *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2355 (2014)). In *DDR*, this Court held that claims that used generic computing elements to retain e-commerce customers amounted to "significantly more":

> [T]hese claims stand apart because they do not merely recite the performance of some business practice known from the pre-Internet world along with the requirement to perform it on the Internet. Instead, the claimed solution is necessarily rooted in computer technology in order to overcome a problem specifically arising in the realm of computer networks.

*DDR*, 773 F.3d at 1257. In *DDR*, the patent claimed generic computing elements that were used to direct e-commerce customers to third-party web sites that had the same "look and feel" of a host website. *Id.* For example, a claimed system: "stores 'visually perceptible elements' corresponding to numerous host web sites in a database . . . ." *Id.* From this the Court found an "inventive concept," because there was no pre-Internet analog and the invention was addressing a problem inherent and unique to the Internet. *Id.*

The District Court should have for the reasons in *DDR* found an

inventive concept in the '980 patent claims. Here, there is no analogy to the "brick and mortar" world where a merchant could preview custom made three dimensional objects to his customers. The inventor here, Robert Kronenberger, knows firsthand that you cannot perform his method in your head or with pencil and paper. (Appx70-71.) Kronenberger and his family have been selling hats in Chicago since 1918. (Appx69.) The Kronenbergers know that customers' tastes in hats are infinite. (Appx13 ('980 patent), col. 1:10-23; Appx69-70 ¶ 8.) They also know that it had been impossible for customers to compare an infinite number of styles before making a purchase decision given the cost-prohibitive nature of stocking infinite variations of hat styles and the limits of a two-dimensional format. (Appx70-71 ¶ 11-12.)

The Kronenbergers tried. Robert Kronenberger devised a system in 1999 whereby he created a book with numerous cap styles and pages of acetate sheets with design elements that a customer could hover over the cap styles. (Appx70 ¶ 9.) Use the book, which is in the record, and you will see that it is but a partial solution for our cap connoisseur with discerning taste. How, for example, does this customer know how his family's coat-of-arms will look on that lime green sailor's cap if it is slightly off center to the left and embossed (i.e., standing in relief)? He does not. And as much as American Needle would like to satisfy this customer's inquiry, it would have

been economically impossible to mock up variations for this gentleman to review.

In 2001, when Robert Kronenberger and the PTO studied the prior art, they found that the nascent industry of electronic commerce suffered from the same two-dimensional format that limited the sale of custom made baseball caps. For example, Costin teaches a method of selling custom blue jeans over computer networks. (Appx101.) But Costin used the same two-dimensional format that Kronenberger was already doing with his book. (*Id.*) And it was this weakness that the PTO highlighted in finding the '980 invention patentable. (*Id.*)

In short, the '980 patent claims contain an "inventive concept" under *DDR*. There exists no pre-Internet analog to the method. (*See* Appx70-71 (Kroneneberger aff.) ¶¶ 11-13.) Moreover, the '980 patent solves the two-dimensional problem of Costin that arose and was unique to e-commerce executed over computer networks. (Appx101.)

## II. THE DISTRICT COURT ERRED BY IGNORING WELL-PLED FACTS AND TESTIMONY SUBMITTED IN OPPOSITION TO DEFENDANTS' EXTRINSIC EVIDENCE.

The lower court failed to apply the familiar Rule 12 standard of construing well pled facts as true and extrinsic evidence in the light most favorable to plaintiff. "Factual allegations must be enough to raise a right to

relief above the speculative level . . . on the assumption that all of the allegations in the complaint are true (even if doubtful in fact) . . . ." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

Here, the District Court held, "promoting sales by providing a visual aid to purchasing over the internet cannot be said to be rooted in computer technology." (Appx6.) This holding does not assume the truth of claim language and file history that shows that the '980 is in fact rooted in computer technology. For example, claim 1 provides*, inter alia*, as follows: "over the computer network, and in response to the user inputs, providing the potential customer with different perspective views of the object with the selected design element on the object at the first location represented by the selected display icon . . . ." (Appx14 ('980 patent), col. 4:51-55.) Claim 1's method is rooted in computer technology because the claim is directed to solve the shortcomings of the prior art that relied on two-dimensional images to sell objects over computer networks. (Appx101 ('980 file history excerpt).)

The District Court also violated the Rule 12 standard with the following holding: "Furthermore, adding design elements to merchandise and displaying the merchandise is a method that can be performed by human thought alone, and previewing merchandise to potential customers is a

longstanding economic practice." (Appx6.) First, the '980 method is obviously drawn to narrower matter than "displaying [] merchandise." (*Id.*) The preamble to claim 1 of the '980 patent provides, "A method for facilitating sale to a potential customer of an object *over a computer network*, said object having a *predetermined three-dimensional shape . . . .*" (Appx14 ('980 patent), col. 4:36-39 (emphasis added).) In reaching its conclusion that the '980 patent is directed to "longstanding economic practice," the District Court ignored the well-pled fact that the '980 claims are drawn to the sale of three-dimensional objects over a computer network.

Second, to conclude that the '980 method could be performed "by human thought alone" the District Court had to ignore the Kronenberger affidavit and Kronenberger's attempt to perform the method in the "brick and mortar" world. (Appx70-71 (Kronenberger aff.) ¶¶ 11-12.) The affidavit was submitted in response to defendants' attorney argument and extrinsic evidence purporting to demonstrate that the '980 claims could be performed with human thought, pencil, and paper. (Appx35 (Dkt. 13).) Upon defendants' proffer of matter outside the Complaints, the District Court should have converted the motions to dismiss to motions for summary judgment. Fed. R. Civ. P. 12(d). And the District Court should have construed the Kronenberger affidavit in the light most favorable to

plaintiff—which compels the conclusion that one *cannot* perform the '980 method by "human thought alone." (Appx6.)

Had the District Court converted the motions to summary judgment motions, four facts in the Kronenberger affidavit would have supported denial of summary judgment:

- The '980 method cannot be performed by human thought alone. (Appx70 ("With the thousands of different design elements that could yield the customer's unique cap, we faced the challenge of presenting the customer with the hundreds of thousands of combinations that could be the perfect cap for that customer.").)

- The claim language of the '980 patent is rooted in computer technology. (Appx71 ("By not using a computer network as part of my prior art system, I was not able to turn design of the custom baseball cap completely over to the consumer.").)

- The '980 patent does not claim a long standing business practice simply applied with generic computing elements. (Appx70-71 ("The [prior art] catalog, while useful to a degree, could not overcome the significant limitation of being two dimensional."); Appx101.)

- The '980 patent solves a problem that arose on the Internet and

is particular to the Internet. (Appx101 ("Costin only permits a user to view either the front or back of the apparel, whereby the custom feature once placed wouldn't be viewable from different perspective views as required by the claims.").)

## III. THE '980 PATENT IS PRESUMED VALID AND MAY ONLY BE DISMISSED UPON A SHOWING OF CLEAR AND CONVINCING EVIDENCE SUPPORTING INVALIDITY.

This Court has not addressed whether the statutory presumption of validity applies to § 101 invalidity challenges like this one. However, the statute and the Supreme Court's construction of that statute make clear that the presumption of validity does apply. The District Court erred by holding otherwise.

### A. The 1952 Patent Act and Recent Supreme Court Precedent Construing It Establish that the Presumption of Validity Applies to § 101.

"A patent shall be presumed valid." 35 U.S.C. § 282(a). "The burden of establishing invalidity of a patent or any claim thereof shall rest on the party asserting such invalidity." *Id.*

The Supreme Court of the United States in 2011 broadly held that the challenger arguing that an asserted patent is invalid must in all instances prove such invalidity by clear and convincing evidence. *Microsoft Corp. v. i4i Ltd.*, 131 S. Ct. 2238, 2242 (2011) ("We consider whether § 282 requires

an invalidity defense to be proved by clear and convincing evidence. We hold that it does."). The Court held, "Congress has set forth the prerequisites for issuance of a patent, which the PTO must evaluate in the examination process. To receive patent protection a claimed invention must, among other things, fall within one of the express categories of patentable subject matter, § 101 . . . ." *Id.* In evaluating whether these and other statutory conditions have been met, PTO examiners must make various factual determinations . . . ." *Id.* It is those factual determinations, including those underlying § 101, that are entitled to a presumption of validity only to be overcome by clear and convincing evidence.

## B.   Section 101 Does *Not* Present a "Pure Question of Law."

The District Court erred when it applied Justice Breyer's concurrence in *Microsoft* to mean that § 101 presents a so-called "pure question of law." (Appx7 ("'Where the ultimate question of patent validity turns on the correct answer to legal questions . . . [the clear and convincing] standard of proof has no application.'") (quoting *Microsoft*, 131 S. Ct. at 2253).)

First, Justice Breyer did not state in his concurrence that § 101 is *per se* devoid of an evidentiary component. Indeed, Justice Breyer illustrated, not with § 101, but rather with whether a product was "in public use" under § 102(b), the invention was "novel" or "nonobvious" under sections 102 and

103, or the written description was sufficient to comply with § 112. *Microsoft*, 131 S. Ct. at 2253.

Second, the District Court ignored the evidentiary component to § 101: "In evaluating whether these [i.e., § 101] and other statutory conditions have been met, PTO examiners must make various factual determinations . . . ." *Microsoft*, 131 S. Ct. at 2242. Here, the PTO looked at the prior art and determined that e-commerce was inhibited by a two-dimensional presentation of merchandise. (Appx101 ('980 file history excerpt).) Also, as discussed above, the PTO impliedly determined that the '980 patent claims transformed data bits into visual representations of merchandise. *See supra* at I.A.

The following review of Supreme Court and Federal Circuit cases demonstrates that there is indeed a factual component to § 101 that the courts apply depending on the procedural posture of the case. In *Alice*, the Court relied on evidence to hold that "intermediated settlement" was a longstanding commercial practice. 134 S. Ct. at 2356 (citing treatises like defendants did in support of their motions to dismiss). In *Mayo*, the Court relied on the intrinsic record to support its holding that "methods for determining metabolite levels were well known in the art." 132 S. Ct. at 1297-98. And, in *Bilski v. Kappos*, the Court relied on treatises, again,

similar to defendants here, to support the holding that hedging risk is a fundamental concept of ancient vintage. 561 U.S. 593, 611 (2010).

The District Court opinion under review is in contrast to *Alice*, *Mayo*, and *Bilski*. In those cases, the Court relied on record evidence to support holdings of invalidity under § 101. Here, on the other hand, the District Court provides no basis whatsoever to support the determinations that the '980 patent claims "cannot be said to be rooted in computer technology," "can be performed by human thought alone," or constitute "longstanding economic practice." (Appx6.)

This Court, too, has consistently applied the factual component of § 101. In *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed Cir. 2015), the Court relied on the intrinsic record to support its holding of no "inventive concept" because the claimed invention used simple conventional elements that had been long understood.

In *Ariosa Diagnostics, Inc. v. Sequenom, Inc.*, 788 F.3d 1371, 1377-78 (Fed. Cir. 2015), the Court held that the intrinsic record and expert testimony established that certain DNA amplification techniques were conventional and well understood in the prior art.

In *OIP Tech., Inc. v. Amazon.com, Inc.*, 788 F.3d 1359, 1363 (Fed. Cir. 2015), the Court relied on both the file history and specification of the

patent-in-suit to support its holding that the generic computer function only lent speed to the method but were not integral to the claimed method.

In *Cybersource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011), the Court relied on the testimony of the inventor to support the Court's holding that one could perform the invention in his head.

And, finally, in *SIRF Tech., Inc. v. Int'l Trade Comm.*, 601 F.3d 1319, 1333 (Fed. Cir. 2010), the Court held the matter to be patentable, among other reasons, because "there is no evidence here that the calculations here can be performed entirely in the human mind."

The District Court did not apply this and the Supreme Court's precedent when it held, without basis, that the '980 patent is not rooted in computer networks and constitutes pre-Internet business practice. (Appx6.) The District Court clearly erred because the factual record shows that the '980 patent: (1) cannot be performed by human thought alone (Appx70); (2) is rooted in computer technology (Appx71); (3) does not claim a long-standing business practice simply applied with generic computing elements (Appx70-71, 101); and (4) solves a problem that arose on the Internet and is particular to the Internet. (Appx101.) These factual determinations are presumed to have been correctly made by the PTO, *Microsoft*, 131 S. Ct. at 2242, and cannot be ignored as irrelevant by the District Court.

## <u>CONCLUSION</u>

This Court should reverse the judgment of the District Court.

Date: <u>April 4, 2016</u>            <u>/s/ Matthew M. Wawrzyn</u>
                                    Matthew M. Wawrzyn
                                    SIPRUT PC
                                    17 N. State Street, Suite 1600
                                    Chicago, IL 60602
                                    (312) 236-0000
                                    mwawrzyn@siprut.com

                                    *Counsel for Plaintiff-Appellant*
                                    *American Needle, Inc.*

## CERTIFICATE OF SERVICE

I hereby certify that on April 4, 2016, an electronic copy of the Brief of Plaintiff-Appellant was filed with the Clerk of the Court for the United States Court of Appeals for the Federal Circuit by using the CM/ECF system. The undersigned also certifies that the following participants in this case are registered CM/ECF users and that service of the Brief will be accomplished by the CM/ECF system:

Andrew F. Pratt
Megan S. Woodworth
Venable LLP
575 7th Street NW
Washington, DC 20004
(202) 344-4000
afpratt@venable.com
mswoodworth@venable.com

*Counsel for Defendant-Appellee Zazzle Inc.*

Joshua L. Raskin
Greenberg Traurig LLP
200 Park Avenue
New York, NY 10166
212-801-6930
raskinj@gtlaw.com

*Counsel for Defendant-Appellee CafePress Inc.*

Ian C. Ballon
Greenberg Traurig LLP
1900 University Avenue, 5th Floor
East Palo Alto, CA 94303
650-328-8500
ballon@gtlaw.com

*Counsel for Defendant-Appellee CafePress Inc.*

Upon acceptance by the Court of the e-filed document, six paper copies will filed with the Court, via Federal Express, within the time provided in the Court's rules.

/s/  Matthew M. Wawrzyn
Matthew M. Wawrzyn
SIPRUT PC
17 N. State St., Suite 1600
Chicago, IL 60602
(312) 236-0000
mwawrzyn@siprut.com

*Counsel for Plaintiff-Appellant
American Needle, Inc.*

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 32(a)(7)(B). The brief contains 5,751 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

This brief complies with the typeface requirements of Federal Rule of Appellate Procedure 32(a)(5)(A) and the type style requirements of Federal Rule of Appellate Procedure 32(a)(6). The brief has been prepared in a proportionally spaced typeface using Microsoft Word 2010 in 14 point Times New Roman.

*/s/  Matthew M. Wawrzyn*
Matthew M. Wawrzyn

# ADDENDUM

# TABLE OF CONTENTS TO ADDENDUM

Memorandum Opinion and Order, Docket No. 28 (Jan. 19, 2016) ..................Appx1

U.S. Patent No. 7,319,980 ...................................................................................Appx9

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AMERICAN NEEDLE, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 15-cv-3968 |
| v. | ) | |
| | ) | Judge John W. Darrah |
| CAFÉ PRESS INC., | ) | |
| | ) | |
| Defendant. | ) | |

**<u>MEMORANDUM OPINION AND ORDER</u>**

Plaintiff American Needle, Inc. filed a Complaint, alleging Defendant CafePress Inc. has

and is infringing U.S. Patent 7,319,980.  Defendant challenges the patent claims' eligibility

under 35 U.S.C. § 101 and moves to dismiss pursuant to Federal Rule of Civil Procedure 12.

Defendant's Motion to Dismiss [14] is granted.

**BACKGROUND**

Plaintiff is an Illinois corporation with its principal place of business in Buffalo Grove,

Illinois.  (Compl. ¶ 1.)  Defendant is a Delaware corporation with its principal place of business

in Louisville, Kentucky.  (*Id.* ¶ 2.)  Plaintiff is the exclusive owner of U.S. Patent 7,319,980 (the

"'980 patent"), which describes a "method for facilitating sale of objects such as caps over the

Internet, including providing a user input for selecting a display icon representing the object

offered for sale, providing a user input for a design element selected by the user to be included

on the object, and providing a display illustrating the cap represented by the selected display icon

with the user selected design element at the user selected location on the cap."  (*Id.* ¶ 7, Exh. 1.)

Plaintiff alleges that the '980 patent is valid and enforceable and that Defendant has and is

directly infringing claims of the '980 patent.  (*Id.* ¶¶ 8-9.)

**LEGAL STANDARD**

Rule 12(b)(6) permits a defendant to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, a complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555). However, plaintiffs are not required to "plead the elements of a cause of action along with facts supporting each element." *Runnion ex rel. Runnion v. Girl Scouts of Greater Chicago & Nw. Indiana*, 786 F.3d 510, 517 (7th Cir. 2015). Rather, the complaint must provide a defendant "with 'fair notice' of the claim and its basis." *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008) (quoting Fed. R. Civ. P. 8(a)(2) and *Twombly*, 550 U.S. at 555). "The degree of specificity required is not easily quantified, but 'the plaintiff must give enough details about the subject matter of the case to present a story that holds together.'" *McCauley v. City of Chicago*, 671 F.3d 611, 616 (7th Cir. 2011) (quoting *Swanson v. Citibank, N.A.*, 614 F.3d 400, 404 (7th Cir. 2010)). When evaluating a Rule 12(b)(6) motion, the court accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Twombly*, 550 U.S. at 555-56.

**ANALYSIS**

"Whoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefor,

Appx2

subject to the conditions and requirements of this title." 35 U.S.C. § 101. Whether a claim is "patent-eligible subject matter under § 101 is a threshold inquiry" and "a matter of law." *In re Bilski*, 545 F.3d 943, 950 (Fed. Cir. 2008). The Supreme Court has "long held that this provision contains an important implicit exception: Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014) (quoting *Association for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107, 2116 (2013)). A patent claim is not ineligible solely on the basis that it includes an abstract concept. *See Alice*, 134 S. Ct. 2355 (citing *Diamond v. Diehr*, 450 U.S. 175, 187 (1981)). Inventions that are "applications of such concepts to a new and useful end . . . remain eligible for patent protection." *Id.* (citing *Gottschalk v. Benson*, 409 U.S. 63, 67 (1972)). "[I]n applying the § 101 exception, [courts] must distinguish between patents that claim the building blocks of human ingenuity and those that integrate the building blocks into something more, thereby transforming them into a patent-eligible invention." *Id.* (quotations and citations omitted).

There is a two-step process to distinguish between "patents that claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id.* First, the court must "determine whether the claims at issue are directed to one of those patent-ineligible concepts." *Id.* at 2355 (citing Mayo *Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1296-97 (2012)). If the patent is directed to a patent-ineligible concept, then the court must search the claims for an "inventive concept − *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (internal citations and quotations omitted). In doing so, the court must examine the "elements of

3

each claim both individually and as an ordered combination to determine whether the additional elements 'transform the nature of the claim' into a patent-eligible application." *Id.* (citing *Mayo*, 132 S. Ct. at 1297).

### Abstract Concept

"An abstract idea is one that has no reference to material objects or specific examples - *i.e.*, it is not concrete." *Ultramercial, Inc. v. Hulu, LLC*, 722 F.3d 1335, 1343 (Fed. Cir. 2013). "[A] method that can be performed by human thought alone is merely an abstract idea and is not patent-eligible under § 101." *CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1373 (Fed. Cir. 2011). The Supreme Court has held that mathematical algorithms and some fundamental economic and conventional business practices are abstract ideas. *See DDR Holdings, LLC v. Hotels.com LP*, 773 F.3d 1245, 1256 (Fed. Cir.2014) (citing *Benson*, 409 U.S. at 64 (finding mathematical algorithms patent ineligible); *Bilski*, 561 U.S. at 611 (finding the "fundamental economic practice" of hedging to be patent ineligible); *Alice*, 134 S.Ct. at 2356 (same for intermediated settlement)).

Claim 1 is independent, representative, and claims:

1. A method for facilitating sale to a potential customer of an object over a computer network, said object having a predetermined three-dimensional shape, the method comprising:

over the computer network, providing the potential customer with a user input through which a design element selected by the potential customer is included on said object at a first location on the object;

providing an input for said potential customer through which any of said plurality of display icons is selected; and

over the computer network, and in response to the user inputs, providing the potential customer with different perspective views of the object with the

4

Appx4

selected design element on the object at the first location represented by the selected display icon,

wherein through said user inputs at least first and second different perspective views of said object with the selected design element displayed thereon at the first location are viewable, with the design element at the first location shown in each of the first and second different perspective views.

(Compl., Ex. 1). Claim 9 is independent and provides for the same method, but specified to facilitating the sale of caps over the internet. (*Id.*) Claim 14 calls for the claims to be carried out using a "computer network server." (*Id.*) Plaintiff describes the patent as solving "a problem particular to e-commerce by allowing consumers to design their own products as a way to drive on-line sales." (Resp. at 1.) Defendant describes the patent as offering customizable merchandise that potential customers can preview from multiple angles.

Defendant argues that showing merchandise to potential customers is an abstract concept. Plaintiff claims that the '980 patent is not abstract because it is necessarily rooted in computer technology; rather, it is a method of facilitating sale to a potential customer over a computer network. However, not everything that uses a computer network is "necessarily rooted in computer technology." *See Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1333 (Fed. Cir. 2012) ("[s]imply adding a 'computer aided' limitation to a claim covering an abstract concept, without more, is insufficient to render the claim patent eligible."). For example, the claims in *DDR Holdings* were upheld because they did not merely "recite a commonplace business method aimed at processing business information, applying a known business process to the particular technological environment of the Internet." *DDR Holdings*, 773 F.3d at 1259. The patent in *DDR Holdings*, dealt with a problem specific to the internet relating to advertisements routing viewers to third-party websites. *Id.* at 1245. Specifically, *DDR Holdings* upheld a patent on a

5

Appx5

system of linking website visitors to third-party sites while maintaining elements of the look and feel of the host site. *Id.* at 1258-59. This system was necessarily rooted in computer technology because it dealt with an internet-specific issue, *i.e.*, losing website visitors who were directed away from the host website after clicking on links.

In contrast, promoting sales by providing a visual aide to purchasing over the internet cannot be said to be rooted in computer technology. Presenting various iterations of products with different design elements in order to entice business is not computer or network specific. Furthermore, adding design elements to merchandise and displaying the merchandise is a method that can be performed by human thought alone, and previewing merchandise to potential customers is a longstanding economic practice. The '980 patent is an abstract idea.

*Inventive Concept*

Since the '980 patent is aimed at an abstract idea, the next step is to search the claims for an "inventive concept − *i.e.*, an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the [ineligible concept] itself." *Alice*, 134 S. Ct. at 2355 (internal citations and quotations omitted). The Supreme Court has stated that, while not the sole test, the machine-or-transformation test is a useful clue and investigative tool: "A claimed process can be patent-eligible under § 101 if: (1) it is tied to a particular machine or apparatus, or (2) it transforms a particular article into a different state or thing." *Bilski*, 545 F.3d at 954.

The '980 patent is not tied to a particular machine, nor does it transform a particular article into a different state or thing. The patent limits an abstract idea, presenting previews of merchandise to potential customers, to computers and networks, but "limiting the use of an

6

Appx6

abstract idea 'to a particular technological environment'" is "not enough for patent eligibility" *Alice*, 134 S.Ct. at 2357 (quoting *Bilski*, 561 U.S. at 610–11). Nor does user-input necessarily transform the abstract idea into an inventive concept. As the Federal Circuit has held, "furnishing icons on a web page" and "generating information to the user based on information inputted by the user" are conventional activities and not an inventive concept. *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1348 (Fed. Cir. 2015). There is no inventive concept that transforms the nature of the claim into a patent-eligible application.

Plaintiff also argues that the lack of multiple views in the prior art shows that the '980 patent is an inventive concept. However, "[t]hat some of the . . . steps were not previously employed in this art is not enough − standing alone − to confer patent eligibility upon the claims at issue." *Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 716 (Fed. Cir. 2014) ("*Ultramercial II*").

*Presumptive Validity*

Plaintiff also contends that the '980 patent has a presumption of validity that must be overcome by clear and convincing evidence. However, the Supreme Court has not applied a presumption of validity when ruling on patent eligibility under § 101. *See Ultramercial II*, 772 F.3d at 720-21 (Mayer, J. concurring) ("Although the Supreme Court has taken up several section 101 cases in recent years, it has never mentioned − much less applied − any presumption of eligibility.") Further, patent eligibility is a question of law. *Bilski*, 545 F.3d at 950. "Where the ultimate question of patent validity turns on the correct answer to legal questions . . . [the clear and convincing] standard of proof has no application." *Microsoft Corp. v. i4i Ltd. P'ship*, 131 S. Ct. 2238, 2253 (2011) (Breyer, J. concurring).

7

Appx7

**CONCLUSION**

The '980 patent claims an abstract idea and lacks an inventive concept that transforms the nature of the claim into a patent-eligible application. For the reasons discussed above, Defendant's Motion to Dismiss [14] is granted with prejudice.

Date: _____January 19, 2016_____     _____
                                           JOHN W. DARRAH
                                           United States District Court Judge

8



US007319980B2

(12) **United States Patent**
Kronenberger

(10) Patent No.: **US 7,319,980 B2**
(45) Date of Patent: **Jan. 15, 2008**

(54) **METHOD AND A COMPUTER NETWORK SERVER FOR FACILITATING SALE OF AN OBJECT**

(75) Inventor: **Robert A. Kronenberger**, Deerfield, IL (US)

(73) Assignee: **American Needle**, Buffalo Grove, IL (US)

( * ) Notice: Subject to any disclaimer, the term of this patent is extended or adjusted under 35 U.S.C. 154(b) by 705 days.

(21) Appl. No.: **09/833,305**

(22) Filed: **Apr. 10, 2001**

(65) **Prior Publication Data**

US 2002/0147664 A1    Oct. 10, 2002

(51) **Int. Cl.**
*G06Q 30/00* (2006.01)
*G06F 17/30* (2006.01)

(52) **U.S. Cl.** .......................................... **705/26**; 705/27

(58) **Field of Classification Search** ................ 705/26, 705/27; 700/130, 131, 132, 136, 137, 138
See application file for complete search history.

(56) **References Cited**

U.S. PATENT DOCUMENTS

| | | | |
|---|---|---|---|
| 5,383,111 A * | 1/1995 | Homma et al. | 705/27 |
| 6,344,853 B1 * | 2/2002 | Knight | 705/26 |
| 6,414,693 B1 * | 7/2002 | Berger et al. | 345/641 |
| 6,591,250 B1 * | 7/2003 | Johnson et al. | 705/51 |
| 2005/0131571 A1* | 6/2005 | Costin | 700/132 |

FOREIGN PATENT DOCUMENTS

JP        02003030276 A  *  1/2003

OTHER PUBLICATIONS

"Quaartz Inc. and Branders.com Partner to Advance The 'Dot Com'Customer Experience," Business Editors, Business Wire, New York, May 15, 2000, p. 1.*
"Small business holiday gift ideas," Jane Applegate, Chicago Sun Times, Chicago, Ill, Oct. 24, 2000, p. 52.*
"Online Promotional Products Leaders, Branders.com and eCompanyStore, Form Alliance," Business Editors/High Tech Writers, Business Wire, NY, Jul. 18, 2000, p. 1.*
"Scotches-R-Us," PR Newswire, Potomac, Jul. 10, 2000, vol. 55, Issue 28, p. 1.*
http://www.spclevents.com, May 11, 2000, revtrieved via WayBackMachine.org, <http://web.archive.org/web/*/www.spclevents.com.*

* cited by examiner

*Primary Examiner*—Matthew S. Gart
(74) *Attorney, Agent, or Firm*—Wood, Phillips, Katz, Clark & Mortimer

(57) **ABSTRACT**

A method for facilitating sale of objects such as caps over the Internet, including providing a user input for selecting a display icon representing the object offered for sale, providing a user input for a design element selected by the user to be included on the object, and providing a display illustrating the cap represented by the selected display icon with the user selected design element at the user selected location on the cap. A user input for creating text to be included on the cap is also provided. A computer network server includes a display icon generator transmitting a display icon representing an object such as a cap, a request generator transmitting a request for user input to select the display icon and to select a design element to be included on the object, and a processor receiving display icon requests and selected design element and generating a visual representation of the user selected design element, which may include text, on the object represented by the selected display icon.

**18 Claims, 3 Drawing Sheets**



Here is the hat you designed!

52

One Click Purchase  Buy Now!

56

22

Appx9

## Fig. 1



## Fig. 2





*Fig. 3*

*22*

Here is the hat you designed!

*52*

One Click Purchase    Buy Now!

*56*

*Fig. 4*

*60*     *66*     *70*     *22*     *72*

Click Here for INSTRUCTIONS:

Wanted    UPDATE    SUBMIT REQUEST FOR QUOTE

Wanted

COLOR PANEL

CROWN

VISOR

*64*

*62*

⇐2⇒

## *Fig. 5*



REQUEST BY USER ⟋*100*

PROVIDE USER WITH DISPLAY WITH OBJECT AND INPUT REQUEST ⟋*102*

RECEIVE USER INPUT RESPONSIVE TO INPUT REQUESTS ⟋*104*

PROVIDE VISUAL REPRESENTATION USING USER INPUT ⟋*106*

RECEIVE USER ORDER FOR OBJECT IN VISUAL REPRESENTATION ⟋*108*

US 7,319,980 B2

<table>
<tr><td>1</td><td>2</td></tr>
</table>

**METHOD AND A COMPUTER NETWORK SERVER FOR FACILITATING SALE OF AN OBJECT**

### BACKGROUND OF THE INVENTION

The present invention is directed toward sales over computer networks, and particularly toward the sale of purchaser designed caps over the Internet.

With many manufactured items, particularly clothing items such as caps, the manufacturers are required to manufacture a large number of different styles in the hope of attracting the widely varying tastes of their potential customers. Such practices can result in large costly inventories, necessitating higher prices to account for the carrying of such inventory and thereby also potentially curbing the sale of the products because of the higher prices. Further, no matter how many different styles a manufacturer may make available, it is impossible to anticipate every style which each customer may want, or to anticipate which styles may intrigue the many different customers sufficiently to induce them to purchase the product when they had not been expecting to purchase a product in the market at the time.

The present invention is directed toward overcoming one or more of the problems set forth above.

### SUMMARY OF THE INVENTION

In one aspect of the present invention, a method is provided for facilitating sale to a potential customer of an object over a computer network, said object having a predetermined three-dimensional shape. The method includes providing the potential customer with the following over the computer network: a display with at least one display icon representing an object having the predetermined three-dimensional shape, a user input for a design element selected by the user to be included on the object, and a display of the user selected design element on the object represented by the selected display icon.

In one form of the invention, a plurality of display icons are provided, and an input is provided for the user to select one of the plurality of display icons prior to providing the display of the user selected design element on the object represented by the selected display icon.

In other forms, the display icons are different perspective views of a predetermined three-dimensional shape of one object, and/or represent different objects.

In still other forms, user created text may be included, including in a selected one of a plurality of design elements; a user input may be provided for selecting among different portions of the object for placement of the design element (such as the visor and segments of the crown of a cap).

In yet another form, a user input may be provided for ordering the object with the user selected design element and receiving a user order from the user input for ordering the object with the user selected design element.

In another aspect of the invention, a method for facilitating sale of caps over the Internet is provided, including providing a user input for selecting a display icon representing a cap offered for sale, providing a user input for a design element selected by the user to be included on the cap, and providing a display illustrating the cap represented by the selected display icon with the user selected design element at the user selected location on the cap.

In one form of the invention, a user input is provided for a user selection of the location on the cap for placing the user selected design element. Various forms such as described

with the first described aspect of this invention may be also be used with this aspect of the invention, including providing a user input for creating text to be included on the cap.

In another aspect of the invention, a computer network server for facilitating sale of an object having a predetermined three-dimensional shape is provided, including a display icon generator transmitting a display icon representing an object having the predetermined three-dimensional shape, a request generator transmitting a request for user input to select the display icon and to select a design element to be included on the object, and a processor receiving the display icon requests and selected design element and generating a visual representation of the user selected design element on the object represented by the selected display icon.

In one form, the display icon generator transmits a plurality of display icons, and the processor generates a visual representation of the user selected design element on the object represented by the selected one of the display icons. In another form, the display icon generator transmits display icons which are different perspective views of a predetermined three-dimensional shape of one object. In still another form, the object is a cap, and the request generator further transmits a request for user input to create text to include in the selected design element.

### BRIEF DESCRIPTION OF THE DRAWINGS

FIG. **1** is a view of an exemplary computer network with which the present invention may be used;

FIG. **2** is a user computer display in accordance with a first embodiment of the present invention;

FIG. **3** is a second user computer display in accordance with the first embodiment;

FIG. **4** is a user computer display in accordance with a second embodiment of the present invention; and

FIG. **5** is a flow chart of the method of the present invention.

### DETAILED DESCRIPTION OF THE INVENTION

In accordance with the present invention, a server **10** may be provided with a computer network **12** such as shown in FIG. **1**. The server **10** includes a suitable link **16** to the network **12**, such as the Internet (although the invention could also be used with a private network), which is itself linked to a plurality of user computers **20**. Typically, each of the user computers **20** will include a display **22** and an input **24** such as a keyboard and/or mouse.

The server **10** includes a processor **30** and a memory **32**. The processor **30**, memory **32** and link **16** cooperate to generate and transmit selected information to the network **12**, with the network **12** conveying that information to an appropriate one or more of the user computers. Specifically, the server **10** may serve as a home site for a business which is selling objects to users over the network **12**. Thus, when a specific user computer **20** communicates with the home site on the server **10** (for example, via an Internet url address), the processor **30** and memory **32** will generate and then transmit (via the link **16** and network **12**) information to that specific user computer **20**. Specifically, the server **10** will transmit data for display on the user computer display **22** which, in accordance with the present invention as discussed further below, will include a display icon representing the object which the business is selling. In the instance of a baseball cap, the display icon will be a view of

US 7,319,980 B2

3

4

a baseball cap. The server **10** will also transmit a request for user input, which request will also be displayed on the user computer display **22**.

FIG. **2** illustrates a user computer display **22** which has received the display data and request for user input which has been transmitted by the server **10** as discussed above. In the example embodiment shown in FIG. **2**, there are multiple requests for user input which have been transmitted and displayed: a request **40** to select a cap style (including a choice of different cap styles), a request **42** to select a view of the cap to be seen (for example, front or side views), a request **44** for a color (including, for example, separate requests for the color of different portions of the hat), a request **46** for the user to input the text he may desire on the hat, and a request **48** to identify the portion of the cap where the user wishes to have the text located.

A VIEW request button **50** is also provided which enables the user to request to view a cap having the characteristics which he has chosen via the requests **40-48**. By clicking that request button **50**, a request may be transmitted to the server **10** which will generate a visual representation **52** of the selected cap design and transmit it to the user computer **20** for display on the display **22** such as shown in FIG. **3**. A purchase instruction request **56** is also provided, whereby the user may request to purchase the particular cap which he has designed and that request will be transmitted to the home site server **10** for processing of the order.

Another embodiment of the invention is shown in FIG. **4**. In this embodiment, a hat illustration **60** is generated by the server **10** and transmitted to a user computer **20** together with requests for user input relating to a design element to include on the hat (at **62**), colors for different portions of the cap such as the crown and the visor (at **64**), and for the text to include in the design element (at **66**). Once the user has input his desired choices responsive to these requests (at **62-66**), he may click the UPDATE request button **70** which will cause a visual representation of the cap to be changed to incorporate the requested features such as illustrated in FIG. **4**. By including the requests on the displayed page which includes the visual representation **60** of the cap, the user may easily input different choices to vary his chosen design.

A request for quote button **72** may also be included which enables the business to give the user a price for the cap which he has designed (for example, more text and/or different design elements may involve greater cost to the business to manufacture and therefore might result in a higher cost. A request to purchase option can also be included with the response to any request for quote.

It should be appreciated that the various user design inputs which are illustrated in the FIGS. **2-4** embodiments are merely illustrative, and that other design elements could be used. For example, different colors could be provided for different panels of a cap, text could be oriented differently (e.g., vertically or horizontally) and in different styles and sizes, and more than one design element could be added to a cap (e.g., on different panels and/or on the visor). With all such user options which are provided, the server **10** may generate a request relating to those options and, responsive to user input responsive to those requests, may generate a visual representation of a cap which incorporates those design elements.

FIG. **5** illustrates the method according to the present invention. Responsive to a request by a user at **100** (e.g., the user transmits the business' url to the network **12**), the server **10** provides the user computer **20** with a display which includes an icon for the object to be sold (e.g., a baseball

cap) and with requests for user input relating to the design (at **102**). The input requests may be of any suitable type such as previously described, which requests will allow the user to make their own design of the object for possible purchase by the user.

The server **10** may then receive user input at **104** responsive to the input requests and, responsive to that input, will generate a visual representation or display of the object in accordance with those requests and provide that visual representation to the user computer **20** at **106**. Assuming that the user then wishes to purchase such an object and provides input to that effect, the server **20** receives the user order for the user's design at **108**.

It should now be appreciated that the present invention may be advantageously used by any business to facilitate its sale of three dimensional objects, by enabling potential purchasers to create their own design according to their own tastes, as well as to enable them to see their design immediately so that they can best judge their design and, if they like it, purchase it. Accordingly, a virtually infinite number of different designs may be provided to potential customers for possible purchase, with those potential customers being able to choose a design according to their own tastes which they will be able to consider to be uniquely theirs, all of which will facilitate the sale of such objects via maximized satisfaction of potential customers.

Still other aspects, objects, and advantages of the present invention can be obtained from a study of the specification, the drawings, and the appended claims. It should be understood, however, that the present invention could be used in alternate forms where less than all of the objects and advantages of the present invention and preferred embodiment as described above would be obtained.

The invention claimed is:

**1**. A method for facilitating sale to a potential customer of an object over a computer network, said object having a predetermined three-dimensional shape, the method comprising:

over the computer network, providing the potential customer with a display with a plurality of display icons representing different perspective views of a predetermined three-dimensional shape of an object;

over the computer network, providing the potential customer with a user input through which a design element selected by the potential customer is included on said object at a first location on the object;

providing an input for said potential customer through which any of said plurality of display icons is selected; and

over the computer network, and in response to the user inputs, providing the potential customer with different perspective views of the object with the selected design element on the object at the first location represented by the selected display icon,

wherein through said user inputs at least first and second different perspective views of said object with the selected design element displayed thereon at the first location are viewable, with the design element at the first location shown in each of the first and second different perspective views.

**2**. The method of claim **1**, wherein said display icons represent a plurality of different objects, including a plurality of different perspective views for each object.

**3**. The method of claim **1**, wherein said object is a cap.

**4**. The method of claim **1**, wherein said design element is user created text.

US 7,319,980 B2

5

**5**. The method of claim **1**, wherein said design element may be selected from among a plurality of design elements, where user selected text may be included in at least one of said plurality of design elements.

**6**. The method of claim **1**, further comprising providing a user input for selecting among different portions of the object for placement of the design element.

**7**. The method of claim **6**, wherein said object is a cap having a crown and visor, and said object portions include at least one segment of the crown and the visor.

**8**. The method of claim **1**, further comprising providing a user input for ordering the object with the user selected design element and receiving a user order from said user input for ordering the object with the user selected design element.

**9**. A method for facilitating sale of caps over the Internet, comprising:

over the Internet, providing a user input through which at least one display icon is selected by a user from a plurality of display icons, each of said display icons representing different perspective views of one cap design offered for sale;

over the Internet, providing a user input for selecting a display element to be included on said one cap; and

over the Internet, providing a display illustrating the selected different perspective views of the one cap corresponding to the selected display icons with the display element at a first user selected location on said cap,

wherein said different perspective views of the one cap design include at least two different perspective views of the one cap on which the display element at the same first location on the one cap is viewable on the display, with the display element shown in each of the at least two different perspective views.

**10**. The method of claim **9**, further comprising providing a user input for a user selection of the location on said cap for placing said user selected design element.

**11**. The method of claim **10**, further comprising providing, over the Internet, a user input for selecting among different portions of the cap represented by the selected display icon for placement of the user selected design element.

**12**. The method of claim **11**, wherein said cap includes a crown and a visor, and said cap portions include at least one segment of the crown and the visor.

6

**13**. The method of claim **9**, further comprising providing a user input for ordering the cap with the user selected design element and receiving a user order from said user input for ordering the cap with the user selected design element.

**14**. A computer network server for facilitating sale of objects having predetermined three-dimensional shapes, said server comprising:

a display icon generator transmitting selected ones of a plurality of display icons over a computer network, said display icons representing a plurality of objects each having one of the predetermined three-dimensional shapes and a plurality of different perspective views of each of the three-dimensional shapes;

a request generator transmitting, over the computer network, a request for user input to identify a selected display icon and to select a design element to be included on said object at a first location on the object; and

a processor receiving display icon requests and selected design elements over the Internet and generating a visual representation of the user selected design element on the object represented by the selected display icon,

wherein at least two of said different perspective views of each three-dimensional shape include said selected design element at the same first location in the generated visual representation, with the selected design element shown in each of the at least two different perspective views.

**15**. The server of claim **14**, wherein said display icon generator transmits a plurality of display icons, and said processor generates a visual representation of the user selected design element on the object represented by the selected one of said display icons.

**16**. The server of claim **14**, wherein said request generator further transmits a request for user input to create text to include in the selected design element.

**17**. The server of claim **14**, wherein said object is a cap.

**18**. The server of claim **14**, wherein said computer network is the Internet.

*    *    *    *    *